UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| BRANDON C. MCDUFFIE, | |
| Plaintiff, | |
| v. | Case No. 23-CV-793-JPS |
| JEREMIAH L. LARSEN | **ORDER** |
| Defendant. | |

Plaintiff Brandon C. McDuffie ("Plaintiff"), a current inmate at Waupun Correctional Institution ("WCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendant Jeremiah L. Larsen ("Defendant") violated his constitutional rights. ECF No. 1. On August 14, 2023, the Court screened the amended complaint and allowed Plaintiff to proceed against Defendant on an Eighth Amendment claim for his deliberate indifference to Plaintiff's serious medical need. ECF No. 8 at 6.

On September 27, 2023, Defendant filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies. ECF No. 13. On October 12, 2023, Plaintiff filed a brief in opposition. ECF No. 17. On October 24, 2023, Defendant filed a reply. ECF No. 21. The motion is now fully briefed and ready for disposition. For the reasons explained below, the Court will deny Defendant's motion for summary judgment based on the exhaustion of administrative remedies and this case will proceed on the merits.

1.     STANDARD OF REVIEW

　　1.1     **Summary Judgment**

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

　　1.2     **Exhaustion of Prisoner Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). He must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Id.*; *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The exhaustion requirement furthers several purposes, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of

litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by a defendant. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

### 1.2.1 Inmate Complaint Review System

The Wisconsin Department of Corrections (the "DOC") maintains an inmate complaint review system ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The ICRS "allow[s] inmates to raise in an orderly fashion issues regarding department policies, rules, living conditions, and employee actions that personally affect the inmate or institution environment, including civil rights claims." *Id*. § DOC 310.01(2)(a). Before commencing a civil action or special proceedings, "inmate[s] shall exhaust all administrative remedies the [DOC] has promulgated by rule." *Id*. § DOC 310.05.

There are two steps an inmate must take to exhaust the available administrative remedies. First, the inmate must file an offender complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id*. § DOC 310.07(2). The ICE may reject the complaint or return the complaint to the inmate and allow him or her to correct any issue(s) and re-file within ten days. *See id*. § DOC 310.10(5),(6). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority within ten days. *Id*. § DOC 310.10(10).[1] If the complaint is not rejected, the ICE issues a recommendation of either dismissal or affirmance to the reviewing authority. *Id*. § DOC 310.10(9),(12). The reviewing authority ("RA") will affirm or dismiss the complaint, in whole or in part, or return the complaint to the ICE for further investigation. *Id*. § DOC 310.11(2).

---

[1] The ICRS defines a "reviewing authority" as "a person who is authorized to review and decide an inmate complaint." Wis. Admin. Code § DOC 310.03(15).

Second, if the ICE recommends, and the RA accepts, dismissal of the complaint, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id.* §§ DOC 310.09(1), 310.12. The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id.* §§ DOC 310.12(2), 310.13. The inmate exhausts this administrative process when he or she receives the Secretary's decision. *Id.* § DOC 310.13(2),(3). If the inmate does not receive the Secretary's written decision within ninety days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted. *Id.* § DOC 310.13(4).

**2. RELEVANT FACTS**

Defendant's motion for summary judgment addresses the issue only of whether Plaintiff exhausted his administrative remedies as described in detail below. The Court finds the following facts relevant to the disposition of the issue at hand.

**2.1 Plaintiff's Allegations**

Plaintiff alleges that on November 28, 2020, at approximately 8:30 a.m., he learned that Larsen and a "suit up" team was about to extract a disruptive prisoner out of his cell. ECF No. 5 at 3. Plaintiff, along with several other inmates, began to yell down the range to Larsen to inform him that Plaintiff is severely asthmatic and needed to be moved off the range to avoid being exposed to the chemical agents. *Id.* All the staff in the restricted housing unit know that Plaintiff is severely asthmatic and that he would be affected by the chemical agents because the cells are connected. *Id.* However, Larsen ignored Plaintiff's request and exposed Plaintiff to the chemical agent. *Id.* at 4.

Around 8:40 a.m., Plaintiff pushed the emergency call button for help. *Id.* Plaintiff suffered for approximately twenty minutes before Larsen

arrived with Nurse Robert Weinman and found Plaintiff nearly unconscious. *Id.* The nurse had Larsen immediately cuff Plaintiff and remove him out of the cell. *Id.* Plaintiff then lost consciousness and woke up strapped to a chair a few doors down from his cell. *Id.* The nurse knew that Plaintiff would not make it to the examination room so brought the emergency air tank to treat Plaintiff. *Id.* After receiving medical treatment, Plaintiff nodded to the nurse when asked if he was okay. *Id.*

Nurse Weinman said to Larsen, "'I don't know why you guys use this stuff around him; he's highly sensitive to the OC spray.'" *Id.* at 5. At that point, Plaintiff watched Larsen turn his body and turn off his body cam between 9:00 a.m. and 9:20 a.m. *Id.* Plaintiff filed inmate complaints against Larsen regarding this incident. *Id.*

### 2.2. Exhaustion Facts

Defendant was employed by DOC at WCI at all times relevant to this lawsuit. Defendant's Proposed Findings of Fact ("DPFF"), ECF No. 15; *see also* Plaintiff's Response to DPFF, ECF No. 18.[2] Emily Davidson is employed by DOC as a Corrections Complaint Examiner ("CCE") at DOC's Central Office in Madison, Wisconsin. She has held this position since January 24, 2016.[3] ECF No. 15 at 1.

Wisconsin has established the ICRS, which gives inmates a mechanism to file complaints related to significant issues regarding rules, living conditions, and staff actions affecting the institution environment as

---

[2] For ease of reading, the Court will cite only to DPFF when not in dispute. The Court will acknowledge all purported disputes where appropriate and discuss the significance of such disputes in the analysis below.

[3] Plaintiff disputes this fact but does not provide any support for this assertion. ECF No. 18. As such, the Court considers Plaintiff's purported disputes in this regard to be undisputed for the purposes of this Order. *See* Fed. R. Civ. P. 56(e)(2). In any event, Plaintiff acknowledges that these disputes are not material to the issue at hand. *See* ECF No. 18.

the principal administrative remedy for those in state custody. The ICRS is governed by Wisconsin Administrative Code ch. DOC 310. *Id.* at 2. Davidson has access to the Inmate Complaint Tracking System "(ICTS"), which is a database that stores all documents and reports submitted and generated through the ICRS. *Id.*

On December 1, 2020, the ICE office received an inmate complaint dated November 30, 2020 from Plaintiff. *Id.* On December 7, 2020, the ICE returned Plaintiff's complaint with an ICE Return Letter because Plaintiff had not followed the chain of command to attempt to resolve the issue before he filed the inmate complaint. ICE Tonia Moon advised Plaintiff in the Return Letter he could resubmit the complaint only after completing all of the following: (1) send the Return Letter to Captain Tritt along with a DOC-643 "Inmate Request" explaining the issue; (2) allow the staff member enough time to reply; (3) if the staff member does not address or resolve the issue, resubmit the Inmate Complaint, including the original Complaint and the Return Letter. The Return Letter explained Plaintiff could then resubmit the complaint to the ICE's office within ten working days of the date of the Return Letter, whether or not he received a reply from Tritt in that time. The Return Letter also included the following note for Tritt: "1) Please document your response or action taken on this letter, date/sign. 2) Return this letter to inmate." *Id.* at 2–3.

The Correspondence Tracking Database ("CTD") is used to track correspondence and responses sent to/from the DAI Administrator, Assistant Administrator, Bureau/Office Directors, Warden/designee, Deputy Warden, and Security Director. *Id.* at 3. Davidson requested the Deputy Warden's secretary to check the CTD for any correspondence from Plaintiff related to the November 28, 2020 OC spray discharge. There was no record of Plaintiff writing Captain Tritt following the ICE's Return Letter

nor that Plaintiff provided Captain Tritt with the December 7, 2020 Return Letter. *Id.* Also, there is no record of a December 7, 2020 complaint being submitted to the ICE office. *Id.* Plaintiff maintains that he resubmitted the complaint on December 7, 2020, and explained to Moon that he had verbally talked to Captain Tritt on December 2, 2020 or December 3, 2020 and that Tritt had instructed Plaintiff to file a complaint. Plaintiff never got a response back from Moon. ECF No. 18 at 5.

On December 21, 2020, the ICE office received and acknowledged inmate complaint WCI-2020-22019. In this complaint Plaintiff wrote he had submitted a complaint about his asthma attack on December 1, 2020 but ICE Moon returned the complaint to him on December 7, 2020. Plaintiff went on to claim that he had then resubmitted the same complaint that night, December 7, 2020, and he still had not received a receipt for the complaint. ICE Moon rejected the inmate complaint on the basis there was not sufficient information to support the complaint. She wrote that although Plaintiff could have refiled the complaint on December 7 if he had done what he was directed to do in the Return Letter, the ICE office had not received the resubmission. ECF No. 15 at 3-4.

On December 23, 2020, Plaintiff appealed this rejection. He claimed in his appeal he had "verbally talk[ed] to Capt. Tritt" "the night of 12-7-2020." He also claimed he put his complaint in the mail, but ICE Moon never got it. On January 12, 2021, the Reviewing Authority, Warden Randall Hepp, agreed with the ICE's recommendation and dismissed Plaintiff's complaint. *Id.* at 4. Plaintiff did not appeal this dismissal. *Id.*[4]

---

[4] Plaintiff does not dispute this fact. However, he correctly points out that the reviewing authority's decision of a rejected complaint is final. *See* ECF No. 18 at 7 (citing Wis. Admin. Code § DOC 310.10(10)).

### 3. ANALYSIS

Defendant requests summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies as to the Eighth Amendment claim before filing the instant lawsuit. Two potential inmate complaints are relevant to the Court's analysis. The Court discusses each in turn. As discussed in detail below, the Court will deny Defendant's motion for summary judgment on Plaintiff's failure to exhaust administrative remedies.

#### 3.1 December 7, 2020 Submission

The parties agree that Plaintiff submitted an inmate complaint regarding the conduct alleged in this lawsuit on December 1, 2020. The parties further agree that this complaint was rejected and returned to Plaintiff because he had not followed the chain of command in attempting to resolve the issue before filing the complaint. The parties' agreements, however, end there. The parties dispute whether Plaintiff resubmitted the December 1, 2020 complaint. Plaintiff maintains that he refiled the complaint on December 7, 2020, and included facts showing that he had spoken with Captain Tritt in an attempt to informally resolve the issue. Defendant maintains that no complaint was filed on this date because there is no record of the complaint in the inmate complaint system.

Ordinarily, questions of fact regarding whether a prisoner exhausted the available administrative remedies, would require the Court to conduct an evidentiary hearing to resolve the issue. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). In his reply, Defendant acknowledges this factual dispute. Regardless of this dispute, he argues that summary judgment is nevertheless appropriate because even if Plaintiff had submitted the December 7, 2020 complaint, there is no dispute that Plaintiff did not fulfill

the requirements as outlined in ICE Moon's December 7, 2020 rejection letter of the initial complaint.

Defendant's argument misses the mark because it is speculative, at best, regarding what ICE Moon would have done with Plaintiff's December 7, 2020 resubmission of the prisoner complaint. Defendant argues that Plaintiff's failure to strictly comply with Moon's instructions in the rejection letter would have necessarily led to its rejection a second time. The Wisconsin regulations governing inmate complaints do not support this assertion. The inmate complaint regulations provide that the "ICE *may* return a complaint within 10 days if it does not meet the criteria…." Wis. Admin. Code § DOC 310.10(5) (emphasis added). Further, the regulations provide that an inmate *shall* attempt to resolve the issue prior to filing the complaint but that the "ICE *may* request inmates to provide evidence of having followed the specified process." *Id.* § DOC 310.07(1) (emphasis added). Assuming Plaintiff resubmitted the December 7, 2020 inmate complaint as he says, he provided ICE Moon with the information that he had informally attempted to resolve his issue with Captain Tritt by verbally explaining the issue; Plaintiff maintains that Tritt had told him to file the complaint. The Court acknowledges that Plaintiff's version of events does not show that he strictly complied with Moon's three requirements for resubmitting the complaint; indeed, Plaintiff does not allege that he ever *wrote* to Tritt about the issue as instructed. However, this fact is not outcome determinative.

Nowhere do the regulations provide the ICE was obligated to reject the resubmitted complaint. The permissive nature of the regulations would have allowed the ICE to accept the complaint based on the fact that Plaintiff had in fact attempted to informally resolve his issue through the chain of command. Defendant may be reading the writing on the wall because,

perhaps, it is more than likely that his complaint would have been rejected for failing to strictly comply; indeed, prison officials have an incentive to reject complaints and avoid judicial review. However, the Court finds this prediction to be speculative given the governing regulations and the Court therefore cannot say that this complaint would have necessarily been rejected. Due to the factual dispute on this filing, a *Pavey* hearing would normally be needed to determine whether Plaintiff mailed the December 7, 2020 resubmission of the complaint. However, as discussed below, the Court finds a hearing to be unnecessary because another inmate complaint satisfied the exhaustion requirement.

### 3.2 WCI-2020-22019

Next, the Court considers whether Plaintiff's second complaint, filed on December 21, 2020, exhausted his administrative remedies. The parties agree that on December 21, 2020, the ICE office received and acknowledged inmate complaint WCI-2020-22019. In this complaint Plaintiff wrote he had submitted a complaint about his asthma attack on December 1, 2020 but ICE Moon returned the complaint to him on December 7, 2020. Plaintiff went on to state that he had then resubmitted the same complaint that night, December 7, 2020, and he still had not received a receipt for the complaint. ICE Moon rejected this inmate complaint on the basis there was not sufficient information to support the complaint.

Defendant argues that Plaintiff's failure to follow the procedure, dictated to him in the December 7, 2020 ICE Return Letter, constitutes a failure to exhaust available administrative remedies. In filing a grievance, a prisoner's compliance with procedural rules is important in making sure prison officials have "a fair opportunity to consider the grievance." *Id.* at 2388. As such, "[ordinarily, a complaint that is *rejected* for procedural reasons, rather than *dismissed* after a determination on the merits, does not

exhaust a prisoner's administrative remedies." *Durley v. Kacyon*, No. 21-CV-154-PP, 2022 WL 16530885, at *5 (E.D. Wis. Oct. 29, 2022) (citing *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005)); *accord Parker v. Almonte-Castro*, No. 21-CV-509-BBC, 2022 WL 2274875, at *4 (W.D. Wis. June 23, 2022) ("[W]hen a complaint is rejected for procedural reasons, it cannot satisfy the exhaustion requirement even if appealed."). But courts in this district have concluded that rejection of an institutional complaint does not *necessarily* render it unexhausted. *See, e.g., Lindell v. Greff*, No. 19-C-827, 2021 WL 718237, at *3 (E.D. Wis. Feb. 24, 2021) ("Because inmates must follow the ICRS rules to properly exhaust, *sometimes* the rejection of an offender complaint demonstrates that the plaintiff did not follow the rules and therefore did not properly exhaust." (emphasis added)).

In *Jones v. Frank,* No. 07-CV-141-BBC, 2008 WL 4190322, *1 (W.D. Wis. Apr. 14, 2008), the court addressed a similar exhaustion question where an inmate's complaint had been rejected for the failure to allege sufficient facts upon which relief may be made. *Id.* at *3. The court acknowledged the general rule that a prisoner's failure to comply with procedural requirements would normally require dismissal for the failure to exhaust administrative remedies. The court went on to explain, however, that a "plaintiff would escape the consequences of the general rule if the procedural requirement at issue prevents him from obtaining "'a meaningful opportunity' to present his grievance." *Id.* (citations and quotation marks omitted). A procedural requirement could be invalid on its face if it is nothing more than "'an additional procedural technicality,'" or an arbitrary barrier to an inmate's filing of a lawsuit or an arbitrary barrier to filing a lawsuit. *Id.* (quoting *Love v. Pullman,* 404 U.S. 522, 526 (1972)).

In this instance, Plaintiff's December 1, 2020 complaint was originally returned for Plaintiff's failure to attempt to resolve the issue prior to filing the complaint. In Plaintiff's second submission, WCI-2020-22019, Plaintiff wrote he had submitted a complaint about his asthma attack on December 1, 2020 but ICE Moon returned the complaint to him on December 7, 2020. Plaintiff further provided that he had resubmitted the same complaint that night, December 7, 2020, and he still had not received a receipt for the complaint. ECF No. 16-4 at 8–9. This complaint was rejected because "Inmate does not provide sufficient information to support complaint." *Id.* at 2. The ICE reasoned that if Plaintiff "had done what the return letter directed him to do he could not have refiled the complaint on 12/7." *Id.* Plaintiff appealed the rejection and specifically provided that he had attempted to resolve the issue by verbally speaking with Captain Tritt. *Id.* at 10. The reviewing authority affirmed the appeal and stated only that the complaint "was appropriately rejected by the ICE in accordance with DOC 310.10(6)." *Id.* at 5.

Here, the Court finds the rejection of Plaintiff's December 21, 2020 complaint was based on a procedural technicality and was therefore an arbitrary barrier to Plaintiff filing this lawsuit. The complaint was not rejected because it was late, nor was it rejected for Plaintiff's failure to informally resolve his issue prior to filing the complaint, as required by DOC 310.07(1). Instead, the ICE's reasoning was that Plaintiff could not possibly have complied with the requirement in the December 7, 2020 letter based on the timing and the lack of any evidence of Plaintiff writing to Tritt. Plaintiff's complaint provided notice to prison officials about the Eighth Amendment claim at issue in this case and the appeal provided notice that he had attempted to resolve the issue through the chain of command.

Nonetheless, it was rejected by the ICE and reviewing authority based on insufficient information to support the complaint.

The rejection of Plaintiff's complaint was based on procedural requirements imposed on Plaintiff that the Court finds to be arbitrary and unjust. Prisoner plaintiffs have limited resources and adding unnecessary procedural hoops to jump through in order to exhaust administrative remedies does not serve the purpose of the exhaustion requirement—to put prison official on notice of issues and give them an opportunity to remedy the situation without judicial intervention. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). The prisoner complaint regulations provide that an ICE may request inmates to provide evidence that they have followed the process to informally resolve complaints. The ICE here, however, took this requirement to an arbitrary and unnecessary level by requiring Plaintiff to show specific documentation of these attempts, all of which took additional time and resources from Plaintiff. Did Plaintiff also need to resubmit his complaint while patting his head and rubbing his tummy, with video evidence to prove compliance? There must be some limit to the requirements an ICE can impose on a prisoner who is simply trying to exhaust his administrative remedies and gain access to the judicial system. The Court draws a line in saying that the requirements presented here went too far.

Plaintiff submitted two (or possibly three) submissions to the ICE about the issue at hand in this lawsuit prior to filing suit. Prison officials' rejection of his complaints obstructed Plaintiff from obtaining a "meaningful opportunity" to present his grievance. *See Jones*, 2008 WL 4190322, at *3 (quotation omitted). "'Prison officials may not take unfair advantage of the exhaustion requirement'" *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (quoting *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006));

the Court finds that this is what occurred in this instance. As such, the Court will deny Defendant's motion for summary judgment based on the exhaustion of administrative remedies.

## 4. CONCLUSION

For the reasons explained above, the Court finds that prison officials' actions prevented Plaintiff from meaningful review of his grievances. As such, the Court will deny Defendant's motion for summary judgment. The Court will enter a scheduling order in due course and this case will proceed on the merits.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment, ECF No. 13, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 17th day of June, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge